**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-01071-CMA-KMT

WILLIAM ZIMMERLING,

    Plaintiff,

v.

AFFINITY FINANCIAL CORPORATION,

    Defendant.

## ORDER DENYING MOTION TO VACATE

This matter is before the Court on Defendant Affinity Financial Corporation's Motion to Vacate Default Judgment. (Doc. # 95.) Judgment was entered in favor of Plaintiff William Zimmerling and against Defendant on November 12, 2010. (Doc. # 94.) For the following reasons, Defendant's Motion is DENIED.

## I. BACKGROUND

Plaintiff, a former employee of Waterfield Financial Services, Inc.,[1] was terminated as an employee in January of 2009. Pursuant to the terms of his employment agreement, Plaintiff was not entitled to compensation if he was terminated for cause. Plaintiff alleges that he was terminated without cause and, thus, was entitled to compensation. Defendant first became a party to this action in October 2009 through Plaintiff's Amended Complaint. (Doc. # 23.) From that time until June, 2010, Defendant

---

[1] Waterfield Financial was a wholly-owned subsidiary of Defendant.

was represented by attorney Daniel E. Friesen.  On June 9, 2010, Mr. Friesen filed an unopposed Motion to Withdraw as Counsel for Defendant, citing the fact that Defendant "has no assets" and "is unable to pay any future legal fees."  Mr. Friesen advised Defendant that it "cannot appear without counsel admitted to practice before this Court, and absent prompt appearance of substitute counsel . . . default judgment or other sanctions may be imposed against [Defendant]."  (Doc. # 68.)  By Minute Order, this Court granted Mr. Friesen's Motion to Withdraw.

   It is undisputed that Defendant did not promptly obtain substitute counsel.  On September 8, 2010, Plaintiff's counsel, Brian Moore, sent a letter to Richard Waterfield, a principal of Defendant, informing him that Plaintiff intended to file a Motion for Entry of Default against Defendant, unless an attorney entered an appearance on behalf of Defendant.  (Doc. # 97-2.)  The letter was sent to 18881 Von Karman Ave., Ste. 1700, Irvine, CA 92612 (the "Von Karman address").  Shortly thereafter, Randall Waterfield, another principal of Defendant, spoke with Mr. Moore via telephone.  Mr. Moore attested that Randall Waterfield attempted to persuade him to drop the suit because Defendant was severely insolvent and therefore judgment proof.   During the phone call, Randall Waterfield did not indicate that Defendant intended to obtain substitute counsel.  However, Randall Waterfield attests that "if [he] knew that the Motion [for Entry of Default] would be filed, [he] would have promptly retained legal counsel.  [Defendant] did not intend for a default judgment to be rendered against it." (Doc. # 95-1 at 14.)  On September 17, 2010, Randall Waterfield sent Mr. Moore an

email message containing Defendant's consolidated balance sheet for 2010. The balance sheet showed that Defendant had $682,699 in total assets and $18,137,626 in total liabilities. This email message also did not contain any indication that Defendant intended to retain counsel. (Doc. # 97-4.)

On September 21, 2010, Plaintiff filed a Motion for Default Judgment, which noted that Defendant had not appeared through substitute counsel since Mr. Friesen had withdrawn over three months earlier. (Doc. # 81.) Although the Motion was served properly, Richard Waterfield attested that Defendant had moved to 620 Newport Center Dr., Ste. 1100, Newport Beach, CA 92660 (the "Newport Center address") in June of 2010. (Doc. # 95-1 at 3.) It is undisputed that Defendant never notified the Court or Plaintiff of its relocation.[2] Thus, the Motion for Default Judgment and all subsequent court filings that resulted in a Judgment against Defendant were sent to the Von Karman address. Although Defendant filed a change of address form with the United States Postal Service, Defendant claims that it did not receive the Motion for Default Judgment or subsequent court filings at its Newport Center address.

At the time Defendant allegedly lacked funds to continue to defend this action, it was continuing the prosecution of an arbitration proceedings against AARP Financial,

---

[2] Defendant does not specify when in June it changed addresses. The only evidence of an address change is a United States Postal Service change of address form, indicating that mail would start being forwarded from the Von Karman address to the Newport Center address on September 14, 2010. (Doc. # 95-1 at 6.) Through at least November 29, 2010 Defendant's website provided the Von Karman address on its "contact us" page. (Doc. # 97-3.) In addition, mail sent to the Von Karman address reached Defendant through at least early September.

Inc. and defending against claims arising from the failure of Waterfield Bank. On October 25, 2010, a panel of the American Arbitration Association rendered an award in favor of Defendant and against AARP Financial in the amount of $2,750,000. (Doc. # 97-1.)

After an evidentiary hearing on damages, this Court ordered that judgment enter in favor of Plaintiff in the amount of $370,930.39. After Plaintiff learned of Defendant's successful arbitration against AARP Financial, Plaintiff retained a Massachusetts attorney to attempt to collect the Judgment from the funds that AARP owed to Defendant pursuant to the arbitration award. On November 24, 2010, Plaintiff obtained an *ex parte* Temporary Restraining Order ("TRO") that restrained AARP Financial from transferring any funds to Defendant without setting aside $380,000 for the possible satisfaction of the Default Judgment.

Mr. Moore, as a professional courtesy, sent an email message to Randall Waterfield on November 29, 2010, alerting him of a preliminary injunction hearing in the Massachusetts action scheduled to occur on December 2, 2010. (Doc. # 97-9.) Defendant retained counsel in Massachusetts the next day. After a brief continuance, the Massachusetts court held a hearing on December 10, 2010 and thereafter entered a preliminary injunction similar to the TRO. (Doc. # 97-11.) Defendant's Motion to Vacate the Default Judgment was filed in this Court six days later.

## II. <u>LEGAL STANDARD</u>

A motion to set aside a default judgment is governed by Federal Rule of Civil Procedure 60(b). Rule 60(b) provides, in relevant part, that a court may, on motion, relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

. . .

(6) any other reason that justifies relief.[3]

Fed. R. Civ. P. 60(b)(1) and (6). There are three requirements that the moving party must establish in order to justify setting aside a default judgment under Rule 60(b): "(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment." *United States v. Timbers Pres.*, 999 F.2d 452, 454 (10th Cir.1993). The inquiry into culpability is a threshold question and, if the movant fails to make this showing, the Court need not consider the other requirements. *Felts v. Accredited Collection Agency, Inc.*, 267 F.R.D. 377, 379 (D.N.M. 2010).

Courts prefer to hear matters on their merits and, thus, when deciding a Rule 60(b) motion, all factual doubts should be resolved in favor of the party seeking relief. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir. 1983). This judicial preference for litigating on the merits, however,

---

[3] Courts only award Rule 60(b)(6) relief in "extraordinary circumstances." *Pelican Prod. Corp.*, 893 F.2d 1143,1147 (10th Cir. 1990).

"is counterbalanced by considerations of social goals, justice and expediency, a weighing process which lies largely within the domain of the trial judge's discretion." *Pelican Prod. Corp.*, 893 F.2d at 1146 (internal quotation and citation omitted). The party seeking to have the judgment set aside bears the burden "to plead and *prove* excusable neglect." *Id.* (emphasis in original).

### III. ANALYSIS

Defendant requests that the Court vacate the Default Judgment based on Rule 60(b)(1) and (6). As basis for its Motion to Vacate, Defendant contends that it lacked "actual notice" because it had changed its address and all of the filings associated with the Motion for Default Judgment had been sent to the Von Karman address. Had Defendant known of the Motion for Default Judgment, it asserts that "it would have promptly retained substitute counsel to defend Affinity Financial's legal interests in this case." (Doc. # 95 at 5.)

The Court harbors some suspicion that Defendant possessed actual knowledge of the filing of the Motion for Default Judgment. Other than a general denial of receipt, Defendant provides no evidence that Plaintiff's Motion for Default Judgment or the subsequent court filings were not forwarded to the correct address pursuant to the change of address form it filed with the Postal Service.

Even if the Court accepts as true Defendant's claim that it lacked actual notice, this would be insufficient grounds to vacate the judgment. First, Defendant's lack of "actual notice" resulted from its own inexcusable neglect. Carelessness does not

mandate relief under Rule 60(b). *Precision Fitness Equip., Inc., v. Nautilus, Inc.*, No. 08-cv-01228, 2009 WL 2169361, at *2 (D. Colo. July 20, 2009). Defendant offers no excuse for its failure to apprise the Court or Plaintiff of its relocation from the Von Karman Address. Instead, Defendant attempts to shift the blame onto Plaintiff by arguing that Mr. Moore should have notified them via informal communication channels that he had filed the Motion for Entry of Default. However, it was not Mr. Moore's responsibility to ensure that Defendant met its litigation obligations. Defendant was the party culpable for its failure to receive filings. This Court noted in its Order granting Mr. Friesen's Motion to Withdraw that Defendant remained "responsible for complying with all court orders and time limitations established by any applicable rules." (Doc. # 69.)

Regardless of whether Defendant lacked actual knowledge of the Motion for Default Judgment, Defendant's duty to retain substitute counsel was triggered by the withdrawal of Mr. Friesen, not Plaintiff's Motion for Default Judgment. (*See* Doc. # 86) ("Despite warnings that it faced an entry of default, Defendant Affinity has not retained substitute counsel.") Defendant was repeatedly warned that failure to retain substitute counsel could lead to a default judgement. In his Motion to Withdraw, Mr. Friesen warned Defendant that "absent prompt appearance of substitute counsel . . . default judgment or other sanctions may be imposed against [Defendant]." (Doc. # 68.) In addition, Mr. Moore also sent the September 8 letter to Defendant, stating that he intended to file a Motion for Entry of Default, "unless an attorney sooner enters an appearance on behalf of Affinity." (Doc. # 97-2.) Defendant does not dispute that it

received these notices and warnings.  Thus, Defendant's claim that it lacked "actual knowledge" of the actual filing of the Motion for Default Judgment is irrelevant because that assertion does not adequately explain its failure to retain substitute counsel.  In this regard, Defendant offers only minimal explanation for its failure to retain substitute counsel or to take other action to protect its interests in this matter.

Defendant asserts that it "had a multitude of legal matters arising from other litigation . . . and lacked the resources to handle all of them."  But Defendant does not explain why it was unable to retain counsel in this case but was able to retain counsel in those other pending actions.  Any argument that it was unable to retain counsel due to exigent circumstances is further belied by the fact that it was able to retain counsel in the Massachusetts action one day after receiving Mr. Moore's November 29, 2010 email message.  *See Hall v. T.J. Cinnamon's, Inc.*, 121 F.3d 434, 435 (8th Cir. 1997) ("TJC's alleged inability to retain counsel is belied by its own actions as it promptly hired local counsel following the entry of default judgment.").  The Court also notes that Defendant's Motion to Vacate Default Judgment was filed six days after Defendant received an unfavorable result in the Massachusetts action.  The facts of this case, even with all factual disputes resolved in favor of Defendant, support the Plaintiff's argument that Defendant "made a deliberate decision not to retain counsel, but to instead abandon the defense of this action because . . . [it] believed itself to be effectively judgment proof." (Doc. # 97 at 9-10.)  Having chosen this manner of proceeding, Defendant is stuck with the consequences.  *Brand v. NCC Corp.*, 540 F. Supp. 562 (E.D. Pa. 1982).  This Court

will not grant relief under Rule 60(b), "when the mistake complained of is a result of litigation tactics or a deliberate and counseled decision by the party." *Precision Fitness Equip., Inc.,* 2009 WL 2169361, at *2 (citing *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996)).

The conclusion that Defendant's decision not to retain counsel was "deliberate" is further buttressed by Defendant's claim that it would have retained counsel had it received actual notice of the Motion for Entry of Default. This shows that Defendant was able to retain counsel if properly motivated. Despite warnings that failure to retain substitute counsel could lead to a default judgment against it, Defendant did not heed those warnings until the consequences of that failure were realized. Furthermore, Defendant admits that it learned of the default judgment on November 29, 2010. (Doc. # 95 at 3.) Rather than seeking to rectify the situation immediately, Defendant instead chose to fight Plaintiff's attempt to collect on the Judgment out of the AARP arbitration award. Only after the Massachusetts court entered a preliminary injunction against Defendant did Defendant turn its attention to disputing the default judgment.

Defendant's inaction in this case is a textbook example of the rationale behind default judgments. As stated by the Tenth Circuit,

> a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.

*Cessna Fin. Corp.*, 715 F.2d at 1444-45 (internal citation omitted). Defendant deliberately ignored warnings to obtain substitute counsel until **after** Plaintiff had been awarded default judgment and had found the means to collect on it. Defendant is not free to litigate on its own schedule. Because the Court finds that Defendant's culpable conduct caused the default, the Court need not resolve whether Defendant has a meritorious defense or whether Plaintiff would be prejudiced by setting aside the judgment.

Accordingly, Defendant's Motion to Vacate Default Judgment (Doc. # 95) is DENIED.

DATED:  April  26 , 2011

BY THE COURT:

*[signature]*

_____
CHRISTINE M. ARGUELLO
United States District Judge